AMERICAN FINANCIAL ASSOCIATES, LTD., Plaintiff,

v.

The UNITED STATES, Defendant,

Complex Industries and Associates, Inc. (Texas), Third Party Defendant.

No. 409–83C.

United States Claims Court.

July 3, 1984.

Edgar A. Blumenfeld, Chicago, Ill., attorney of record for plaintiff.

M. Susan Burnett, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

This contract case comes before the court on plaintiff's motion for summary judgment, defendant's cross-motion for partial summary judgment, and defendant's motion for default judgment against the third party defendant. Plaintiff, American Financial Associates, Ltd. (AFA), is a financial institution which was assigned the accounts receivable respecting two ongoing government contracts held by the contractor and third party defendant, Complex Industries and Associates, Inc. of Texas (Complex). AFA contends that it is entitled to two payments from defendant, which were erroneously made to Complex in 1980 by defendant after the statutory notice required by the Assignment of Claims Act, 31 U.S.C. § 3727 and 41 U.S.C.

§ 15, was duly met.[1] Defendant alleges, in turn, that plaintiff did not provide the obligatory statutory notice of the assignment prior to the issuance of one of the payments, in the amount of $134,066.55, therefore entitling it to partial summary judgment with respect to said payment. Additionally, defendant urges that plaintiff's motion for summary judgment must be denied with respect to all claims, because there is a genuine issue of material fact with respect to whether payments to Complex, the assignor, were "in effect" made to the assignee, AFA. Defendant also argues, alternatively, that if it is liable to plaintiff to any extent premised on the alleged assignment, it is entitled to recover all such "erroneous" payments made to Complex.

Jurisdiction in this court is bottomed on 28 U.S.C. § 1491, 31 U.S.C. § 3727 (formerly 31 U.S.C. § 203), and 41 U.S.C. § 15.

This court has carefully considered the pleadings of the parties and their contentions at oral argument. For the reasons set forth below, we are of the opinion that defendant's motion for partial summary judgment should be granted with respect to the $134,066.55 payment, plaintiff's related motion for summary judgment should be denied, and plaintiff's motion for summary judgment should be granted with respect to the remaining claim for $9,521.28. Additionally, defendant's motion for a default judgment against Complex shall be granted.

## FACTS

Plaintiff is an Illinois corporation, having its principal place of business in Lincolnwood, Illinois. The business was founded in February 1980, and has two shareholders, Morton Tatar and August Lihosit, each of whom has owned 50% of the company since its inception. Although the precise nature and extent of plaintiff's business is not discernible from the record, the parties agree that plaintiff is a "financing institution." Complex, as of the time of the assignment to AFA, was a Texas corporation in the business of providing security guard and related services to federal installations, with its principal place of business in San Antonio, Texas. The two contracts at issue, and assigned in this case, were entered into between Complex and two offices of the United States Navy. The record does not reveal any connection between the two offices or the personnel who administered the two contracts, aside from the fact that both offices are located in Charleston, South Carolina.

Contract No. N00612–80–D–7004 (Contract No. 7004), the last in point of time, was awarded by the Regional Contracting Department, Naval Supply Center, Charleston, South Carolina, for the provision of escort/guard services at the Polaris Missile Facility Atlantic. This contract, which took effect on December 28, 1979, contemplated an award in the total estimated amount of $1,114,569.00. In addition, it specifically incorporated by reference certain applicable Armed Services Procurement Regulations (ASPR), among which was 32 C.F.R. § 7–103.8 (Assignment of Claims), which provides, in pertinent part, as follows:

(a) Pursuant to the provisions of the Assignment of Claims Act of 1940, as amended (31 U.S.C. 203, 41 U.S.C. 15), if this contract provides for payments aggregating $1,000 or more, claims for monies due or to become due the Contractor from the Government under this contract may be assigned to a bank, trust company, or other financing institution, .... Unless otherwise provided in this contract, payments to an assignee of any monies due or to become due under this contract shall not, to the extent provided in said Act, as amended, be subject to reduction or set-off.

\*     \*     \*     \*     \*     \*

---

1. Plaintiff's complaint initially asserted a claim for a third payment, made on July 9, 1980 in the amount of $9,838.66, and discussed, *infra,* as well as a claim for an accounting of all payments made by defendant on each of the foregoing contracts. At oral argument, held on June 12, 1984, plaintiff moved to withdraw both of said claims, with prejudice, which motions were granted.

When a contract is to be assigned pursuant to the above clause, *the assignee shall forward to* the administrative contracting officer, *the disbursing officer,* and the surety, if any, the notice and instrument of assignment in the number of copies indicated below:

(i) To the administrative contracting officer—a true copy of the instrument of assignment and an original and three copies of the notice of assignment. The administrative contracting officer shall acknowledge receipt by signing and dating all copies of the notice of assignment and shall—

(A) file the true copy of the instrument of assignment and the original of the notice in the contract file.

(B) forward two copies of the notice to the disbursing officer designated in the contract to make payment.

(C) return a copy of the notice to the assignee, and

(D) advise the procuring contracting officer that the assignment has been made....

(iii) *To the disbursing officer designated in the contract to make payment a true copy of the instrument of assignment and an original and one copy of the notice of assignment.* The disbursing officer shall acknowledge and return to the assignee the copy of the notice and shall file the true copy of the instrument and original notice....

(Emphasis added.)

Another provision of Contract No. 7004 stated that:

Payment will be made by
Naval Supply Center
Code 55.23
Charleston, SC 29408.

Prior to the foregoing, on or about September 28, 1979, the Southern Division, Naval Facilities Engineering Command entered into Contract No. N62467–79–C–0795 (Contract No. 0795), which was also for the provision of security guard services, at the Regional Medical Center Compound, Naval Regional Medical Center, Charleston, South Carolina. A copy of a confirmation letter to Complex dated September 28, 1979, from J.W. Little, the contracting officer, reveals that the award under Contract No. 0795 was in the amount of $135,714.00, and covered services to be performed between October 1, 1979 and September 30, 1980.[2] According to said confirmation letter, the contract listed the address of the Public Works Officer, in Charleston, South Carolina, who was to administer the services under the contract, as well as the address of the Disbursing Officer, in Port Hueneme, California, who was to make all payments thereunder.

Subsequent to the execution of Contracts No. 7004 and 0795, on May 7, 1980, Complex assigned its accounts receivable under said contracts to plaintiff, pursuant to a separate assignment agreement for each respective contract. The assignments, both of which were to remain in effect for all moneys due and to become due under the respective contracts for the term of the respective contracts or one year (whichever was longer), commencing May 7, 1980, were made to AFA in consideration for loans of certain sums of money to Complex. Following said assignments, on June 20, 1980, plaintiff mailed a Notice of Assignment respecting Contract No. 7004, as well as copies of the assignment instrument, to the Regional Contracting Department, Naval Supply Center, Charleston, South Carolina, to the attention of L.B. Craddock, Contracting Officer. Receipt of said Notice was acknowledged on June 24, 1980, by Joan C. Music, the Administrative Contracting Officer of the Regional Contracting Department in Charleston, on the lower right hand corner of the Notice of Assignment, and a copy of same was returned to plaintiff, which was attached to an acknowledgment letter dated June 26, 1980. Said letter also noted that two copies of the Notice of Assignment were being forwarded to the Disbursing Office under separate cover.

**2.** No original or copy of Contract No. 0795 was submitted on the record by either party.

Similarly, on June 20, 1980, plaintiff also mailed a Notice of Assignment and a copy of the May 7, 1980 assignment instrument with respect to Contract No. 0795 to J.W. Little, Director of the Naval Facility Engineering Command, Contract Division in Charleston. Receipt of this notice was also acknowledged on the bottom of the Notice of Assignment on June 23, 1980, and contains two signatures: that of G.P. Hughes, Director of the Financial Management Division, Naval Facilities Engineering Command, "On Behalf of Disbursing Officer," and an illegible signature of another official "On Behalf of Contracting Officer." Three copies of the Notice of Assignment, with receipt acknowledged, were returned to plaintiff as enclosures to an acknowledgement letter dated June 25, 1980, by A.H. Demos, Head, Contract Administration Branch.

On July 9, 1980, the Naval Construction Battalion Center in Port Hueneme, California, issued Check No. 00,396,716, in the amount of $9,838.66, as payment under Contract No. 0795. Said check was drawn to the order of:

American Financial Assoc., Assignee

Complex Ind & Ass. Inc., DBA Grd All Se.

This check was addressed to the Lincolnwood, Illinois, address of AFA.

Subsequently, on October 31, 1980, the same disbursing office in Port Hueneme issued Check No. 00,409,540 for $9,521.28, also as payment under Contract No. 0795. This payment was made to the order of Complex only, however, with an address in Universal City, Texas. Two weeks thereafter, on November 14, 1980, Ms. Marcy Schless, an employee of plaintiff, wrote a letter to the Naval Facilities Engineering Command in Charleston, in which she apparently complained about the issuance of the October 31 payment to Complex rather than to plaintiff. In a follow-up letter dated November 18, 1980, confirming a telephone conversation that took place earlier that day, A.H. Demos informed Ms. Schless that "the error which caused mailing of checks to Complex Industries after the ef-

fective date of the Assignment has now been corrected. All future checks will show American Financial Associates, Ltd. as the payee and will be mailed to your office."

The third and final check pertinent to subject litigation, No. 00,127,283, was issued on November 6, 1980, in the amount of $134,066.55, by the Naval Supply Center in Charleston as payment on Contract No. 7004. This check was drawn to the order of Complex, at its San Antonio, Texas, business address, in payment of three invoices submitted by Complex. It was signed by one M.C. Brown, a disbursing officer. The uncontested declaration of the disbursing official who conducted the final review and approval of invoices for payment avers that, at the time of this review and approval, neither the office's contract payment file nor the foregoing three invoices indicated that Complex had previously assigned the proceeds of Contract No. 7004.

Thereafter, on November 25, 1980, a supervisor of the disbursing office, Ms. Shirley Moraska, telephoned the office of plaintiff regarding Contract No. 7004. This is indicated by a declaration of Ms. Moraska, and corroborated by a handwritten notation on a copy of the Notice of Assignment, *supra,* addressed to L.B. Craddock, the contracting officer. According to Ms. Moraska, she does not recall what prompted her telephone call to plaintiff's office on that date, except that it was the usual practice of employees who processed Notices of Assignment to act promptly upon receipt of such notices. (Apparently, at this posture the disbursing office had received only a copy of the notice previously forwarded to it by the contracting officer.) Ms. Moraska's uncontradicted declaration states further that she recalled the substance of her telephone conversation that day "because of the unusual response by the lady who answered for AFA."

Specifically, she states that she told "the lady at AFA" that she could not complete the processing of its Notice of Assignment under Contract No. 7004 until her office received from the assignee a true copy of

the instrument of assignment and one copy of a Notice of Assignment *addressed to the disbursement officer designated in the contract.* The woman from plaintiff's office responded, according to Ms. Moraska, that she "had no original Notice of Assignment addressed to the disbursing officer .... [and that she might] have to change some of the names and addresses on some of the documents she had, and send them to the Disbursing Officer." When Ms. Moraska allegedly responded that "altered documents originally addressed to the contracting officer would probably not be considered a proper Notice of Assignment to the Disbursing Officer," the woman from AFA then reportedly replied that "that was the best she could do and that it was all the Disbursing Officer was going to get."

On December 2, 1980, the disbursing office in Charleston then received a copy of the Notice of Assignment from plaintiff, with respect to Contract No. 7004, dated June 20, 1980, which curiously contained an original acknowledgment of receipt in the lower right corner from Joan C. Music, the Administrative Contracting Officer, dated June 24, 1980. This Notice was identical to the acknowledged copy of the Notice of Assignment to L.B. Craddock, Contracting Officer, *supra,* except that the "Attn:" line was apparently "whited out," as observed by Ms. Moraska, and "M.C. Brown, Disbursing Officer" was entered in place of "L.B. Craddock, Contracting Officer." Subsequently, on December 19, 1980, Mr. Tatar, the then president of plaintiff, wrote a letter addressed to the Contracting Officer, to the attention of Joan C. Music, asking her to "Please note our assignment of record dated November 25, 1980 on [Contract No. 7004]." He then requested that all checks be sent to plaintiff's office in Lincolnwood, Illinois.

Plaintiff alleges in its pleadings that Complex negotiated the two checks it received on Contracts No. 7004 and 0795, and retained the funds therefrom, in derogation of its assignment agreement with plaintiff. Moreover, it alleges that repeated demands for payment from Complex have been unavailing. Plaintiff further alleges in an affi-davit by its president in October 1983, Mr. Lihosit, that Complex is and has been indebted to plaintiff in an amount in excess of $200,000 under the foregoing assignments, and that Complex has been a "nonviable corporation" since 1981.

## DISCUSSION

Plaintiff claims that it is entitled to receive the aggregate amount ($143,587.83) reflected in the two payments, *supra,* which it alleges defendant wrongfully made to Complex on October 31 and November 6, 1980. In support of its position, plaintiff contends that the assignments of all accounts receivable emanating from Contracts No. 7004 and 0795 from and after May 7, 1980, were duly effected and noticed, prior to said payments, in accordance with the Assignment of Claims Act, 31 U.S.C. § 3727 and 41 U.S.C. § 15 (also known as the Anti-Assignment Act). Plaintiff concludes that, as a consequence, defendant is liable to it for such payments under the general law of assignments. *See Central National Bank of Richmond v. United States,* 117 Ct.Cl. 389, 397, 91 F.Supp. 738 (1950).

In contrast, defendant contends that plaintiff is not entitled to the payment on Contract No. 7004 in the amount of $134,-066.55, *supra,* because it did not file the statutorily required notice to the contractually designated disbursing officer prior to the issuance by defendant of said payment to Complex. Moreover, defendant avers that summary judgment in favor of plaintiff is precluded on all payments made under Contracts No. 7004 and 0795 because certain factual evidence indicates that payments to the assignor were "in effect" payments to the assignee. Such evidence, in defendant's view, compels a finding that there is a genuine issue of material fact on plaintiff's motion.

As a threshold matter, the court notes that both 41 U.S.C. § 15 and 31 U.S.C. § 3727 appear applicable to the facts of the instant case. This conclusion follows because the interests transferred by Complex

to AFA, *i.e.*, the rights to "accounts receivable" under Contracts No. 7004 and 0795, constitute both contractual rights to the proceeds of executory contracts, covered under the former statute, and a present and future interest in "claims" against the government for work already done, covered under the latter statute. *See Tuftco v. United States*, 222 Ct.Cl. 277, 284 n. 4, 614 F.2d 740 (1980). Application of the two statutes to the facts of the instant case does not produce a different result, however, in any material respect. Hence, for the purpose of simplification, this court will refer hereinafter only to the terms of 41 U.S.C. § 15, the more clearly applicable statute.[3]

## I.

■ In substance, 41 U.S.C. § 15 provides that an assignment of claims "to become due" to a financing institution such as plaintiff shall not be efficacious against the United States before written notice of the assignment is filed by the assignee with the contracting officer (or agency head) *and* the contractually designated disbursing officer. It is also settled law that notice to the government of an assignment under the anti-assignment statutes becomes effective as of the time of its *actual receipt*. *Central National Bank*, 117 Ct.Cl. at 398, 91 F.Supp. 738.

■ Although plaintiff makes the vague assertion that it notified defendant of the assignment of the accounts receivable due and coming due under Contract No. 7004 "in compliance with the applicable provisions of the Federal Statute covering assignment of claims," it has nowhere contended that the requisite notification was *received* by the contractually designated disbursing officer *prior* to the $134,066.55 payment to Complex on November 6, 1980.[4] The reason for plaintiff's failure to make such a contention is apparent from a review of the uncontroverted evidence on the record, which clearly shows that the obligatory written statutory notice to the disbursing officer on Contract No. 7004 was not received until after said payment was made. This is evidenced by the receipt stamp of the disbursing office, dated December 2, 1982, on the Notice of Assignment addressed to the attention of "M.C. Brown, Disbursing Officer."

Supportive of the foregoing are a number of admissions, both tacit and direct, by plaintiff's representatives that the statutory notice of the assignment of Contract No.

3. This statute provides, in pertinent part, that:

No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order *transferred,* so far as the United States are concerned. . . .

The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency: *Provided,* ... 4. That in the event of any such assignment, *the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment* with (a) the contracting officer or the head of his department or agency; (b) the surety or sureties upon the bond or bonds, if any, in connection with such contract; and (c) *the disbursing officer, if any, designated in such contract to make payment.*

Notwithstanding any law to the contrary governing the validity of assignments, any assignment pursuant to this section, shall constitute a valid assignment for all purposes.

In any case in which moneys due or to become due under any contract are or have been assigned pursuant to this section, no liability of any nature of the assignor to the United States or any department or agency thereof, whether arising from or independently of such contract, shall create or impose any liability on the part of the assignee to make restitution, refund, or repayment to the United States of any amount heretofore since July 1, 1950, or hereafter received under the assignment.

(Emphasis added.)

4. Although plaintiff attached a Notice dated June 20, 1980, regarding Contract No. 7004, addressed to "M.C. Brown, Disbursing Officer," to its complaint and motion for summary judgment, it failed to allege that said notice was received by the disbursing officer prior to November 6, 1980.

7004 was not *submitted* by plaintiff to the disbursing office until November 25, 1980, or thereafter. For example, the uncontroverted declaration, *supra,* of the disbursing office's supervisor, Shirley Moraska, is that during the telephone conversation of November 25, 1980, plaintiff's employee admitted that plaintiff had not yet submitted a written notice of the assignment to the disbursing office. Additionally, the reference to "our assignment of record dated November 25, 1980" on Contract No. 7004 by plaintiff's president in his letter to the contracting officer, dated December 19, 1980, constitutes an *ante litem motem* admission of considerable probative value. Finally, and perhaps most importantly, counsel for plaintiff conceded at oral argument that plaintiff did not submit the required written notice of its assignment to the disbursing officer prior to the payment of November 6, 1980, to Complex. Hence, the conclusion is clear beyond cavil that no adequate statutory notice to a disbursing official of the assignment of the accounts receivable under Contract No. 7004 was filed prior to the payment to Complex of $134,066.55.

■ Plaintiff protests, however, that 41 U.S.C. § 15 only requires that notice be given to *"the disbursing officer, if any,* designated in such contract to make payment." He then argues that no statutory notice to the disbursing office was required in the instant case because no disbursing officer was designated by name in the contract. The court finds this contention to be totally without merit. Although no specific individual is named in Contract No. 7004 as the disbursing officer, the contract specifies that payment is to be made by "Naval Supply Center, Code 55.23, Charleston, SC." Defendant makes the uncontroverted assertion that "Code 55.23" is the designation for the officer in charge of making

disbursements under the contract. We therefore hold that the inclusion of said code number and address was an adequate designation of the disbursing officer to satisfy the purposes of the statutory notice requirements, discussed *infra.*[5]

Plaintiff also contends that a lack of direct notice from itself to the disbursing officer prior to the November 6, 1980 payment should not bar the effectiveness of the May 7, 1980 assignment of Contract No. 7004 against the government as of that date, because it "had the right to rely on" the contracting officer's representation in its June 26, 1980 letter, *supra,* that two copies of the Notice of Assignment were being forwarded to the disbursing office. Plaintiff further avers that if it is strictly held to the notice requirements under the applicable statutes, the court would be elevating form over substance, inasmuch as the disbursing office apparently lost or misfiled the notice from the contracting officer and could have done the same with the notice from plaintiff.

■ Such contention of plaintiff, to say the least, is misplaced. The notice provisions (to the contracting officer as well as to the disbursing officer) of the anti-assignment statutes serve to further the statute's purpose of "prevent[ing] possible multiple payment of claims, [and] ... making unnecessary the investigation of alleged assignments...." *United States v. Aetna Surety Co.,* 338 U.S. 366, 373, 70 S.Ct. 207, 211, 94 L.Ed. 171 (1949). In order to accomplish the foregoing purposes, said notice provisions must be strictly construed. *See, e.g., United States v. Shannon,* 342 U.S. 288, 293, 72 S.Ct. 281, 284, 96 L.Ed. 321 (1952); *Kingsbury v. United States,* 215 Ct.Cl. 136, 563 F.2d 1019 (1977). Congress's strong interest in avoiding multiple payments and assuring that all responsible government officials are timely notified of

---

5. The reason proffered by defendant for the numerical code designation is that its purpose is merely to identify any person holding the job title of "disbursing officer" at any point in time. This construction certainly is administratively preferable inasmuch as it tends to benefit the assignee more so than the debtor. For example,

if a particular individual were named in the contract as the disbursement officer and said person's job description changed prior to the assignment, notice by the assignee to such named individual of the assignment could arguably be contended by defendant as failing to notify the disbursement officer.

assignments is further evident from the regulations promulgated pursuant to the anti-assignment statutes, expressly incorporated into subject contract, which provide that both the assignee *and* the administrative contracting officer must forward a notice and a copy of the instruments of assignment to the disbursing officer. *See* 32 C.F.R. § 7–103.8, *supra.*

█ This court, therefore, does not consider the assignee's purported reliance on the contracting officer's representation of June 26, 1980, sufficient to justify reading the requirement for notice to the disbursing officer out of the applicable statute, regulation, and contract. In so finding, this court endorses the holding of the General Accounting Office (GAO) that "we cannot view [the] notice [requirement in the regulations for the contracting officer to notify the disbursing officer of assignments of contracts] as a substitute for the plain and unambiguous directive of the statute that the assignee forward a true copy of the assignment as well as a notice of assignment directly to the disbursing officer named in the contract." *Merchants & Farmers Bank & Trust Company,* No. B–159494 (Comp.Gen. Sept. 2, 1966).

█ Plaintiff also asserts reliance on the Court of Claims decision in *Tuftco, supra,* in an apparent attempt to show that the government's actions with respect to Contract No. 7004 manifested an intent to waive the provisions of the anti-assignment statutes. In *Tuftco,* the court, pursuant to the "long-recognized principle" that the government may recognize an assignment if it chooses to do so, despite the bar of the Anti-Assignment Act, held that a waiver of the Act had taken place. 222 F.2d at 285–87, 614 F.2d 740. Close analysis of the *Tuftco* opinion demonstrates clearly, however, that defendant's actions with respect to the assignment of the proceeds *under Contract No. 7004* did not amount to a waiver of the Act.

The plaintiff in *Tuftco* was a manufacturer of mobile homes and was the assignee of two contracts to provide mobile homes for the Department of Housing and Urban Development (HUD). Before each assignment took effect, plaintiff and the assignor visited with and notified the contracting officer of the proposed assignment. The contracting officer responded that if the assignee assumed the assignor's obligations, HUD would recognize the assignment, in spite of the Anti-Assignment Act, and make all contractual payments to the assignee or its representative. *See id.* at 280–82, 614 F.2d 740. HUD subsequently made two payments on each contract to the assignee or its representative, but made 17 other payments on the two contracts to the assignor. The court in *Tuftco* looked to the "totality of the circumstances" rather than any particular act, and found that the government had recognized the assignments "by its knowledge, assent, and action consistent with the terms of the assignments." *Id.* at 287, 614 F.2d 740.

In contrast, in the instant case, the government has not manifested comparable knowledge, assent, and action pursuant to the assignment under Contract No. 7004 as was present in *Tuftco.* The record provides no indication whatsoever that the disbursing office, the entity likely to be most closely involved in the assignment of contractual *proceeds,* had any knowledge of the assignment of Contract No. 7004 prior to the issuance of subject payment on November 6, 1980. Without any knowledge, as here, there obviously was neither assent nor action, such as the issuance of payments to the assignee, pursuant to an assignment. Moreover, once the disbursing office had knowledge of the assignment, it is apparent from the telephone conversation of November 25, 1980, *supra,* that the office did not assent to or take action pursuant to the assignment as of that date. Accordingly, this court is compelled to hold that neither the statutorily required notice nor a waiver took place that can entitle plaintiff to the payment of $134,066.55 on Contract No. 7004.

In its reply brief, plaintiff makes the final assertion that this court is precluded by the doctrine of collateral estoppel from deciding whether proper statutory notice of

subject assignments was given. Specifically, it refers to a decision of an administrative law judge (ALJ) of the Department of Labor, *In the Matter of Complex Industries and Associates, Inc. of Illinois,*[6] Case No. 81–SCA–1353 (1983). Said decision involved a complaint by the Department of Labor, pursuant to the Service Contract Act of 1965, 41 U.S.C. § 351 *et seq.*, against Complex, plaintiff, and various shareholders and officers of the two corporations for failure to pay wages and fringe benefits under 16 contracts subject to the Act, including subject contracts. One contention made by the government therein was that it had the right to withhold payments under Contract No. 7004 from plaintiff because plaintiff was not a bona fide assignee of Complex. It supported this contention by alleging, *inter alia,* that Complex and plaintiff were identical, thereby vitiating a valid assignment. The ALJ held that a bona fide assignment, pursuant to the Assignment of Claims Act, had taken place, and mentioned that the parties had stipulated that "the contractor [sic] was given appropriate notice, and each contracting agency acknowledged the assignment position of [plaintiff]." Because it also found that the government had withheld approximately $54,000 more than the amount of the contractor's liability under the Service Contract Act, the ALJ ordered said amount, "withheld on the *completed* contract [*i.e.,* No. 7004]," to be paid to plaintiff.

■ It is by now settled law that the courts must accord *res judicata* or collateral estoppel effect to adjudicative decisions of administrative agencies such as those of an ALJ, if the parties had a full and fair opportunity to litigate. *United States v. Utah Construction Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). The doctrine of collateral estoppel is inapplicable, however, if the same issue before the tribunal of second instance was *not* actually and necessarily decided by the tribunal of first instance. *See, e.g., Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

■ It is apparent that in the Department of Labor case, the ALJ was presented with the issue of whether a valid assignment had taken place *at all* with respect to Contract No. 7004. In contrast, in the instant case, the question before the court is whether a valid assignment, pursuant to the Assignment of Claims Act, took place *prior* to the payments of November 6, 1980 on Contract No. 7004 and of October 31, 1980 on Contract No. 0795.

Counsel for plaintiff protested at oral argument, however, that the decision of the Department of Labor that a valid assignment had taken place pursuant to the Anti-Assignment Act implicitly incorporated a holding that all elements of a valid assignment pursuant to said Act were met, including timely and proper notice. Consequently, he added that defendant cannot now argue that particular elements of a valid assignment were not met, simply because the argument with respect to such element(s) had not been raised before the tribunal of first instance. Plaintiff's contention must be deemed to fall wide of the mark, in light of the precise issues raised before the Department of Labor. In determining whether a valid assignment had taken place which would preclude the government from withholding payments on the *completed* contract, it was *not* necessary for the Department of Labor to determine whether a valid assignment had taken place *by November 6, 1980,* prior to the completion of the contract.[7] Hence, be-

---

6. Complex, a Texas corporation, was purchased on May 9, 1980, by a group located in the Chicago area, and was owned thereafter by an Illinois corporation, Complex Industries of Illinois, Inc., which was formed by the Chicago group.

7. Although the date of completion of performance of the contract cannot be ascertained from the record, said date must have been subsequent to December 15, 1980, inasmuch as the Department of Labor's opinion was with respect to payment for work performed under subject contracts from October 1 to December 15, 1980.

cause the issue of *when* the statutory notice and/or recognition of the assignments took place under the respective contracts was neither actually nor necessarily decided by the ALJ, we hold that his decision cannot be given collateral estoppel effect on said issue.

## II.

■ Contract No. 0795 presents a markedly different picture than Contract No. 7004 on the legal issue of entitlement of the plaintiff/assignee to contractual payments. As with Contract No. 7004, it is also clear beyond cavil that plaintiff has not complied with the notice provisions of the Act with respect to Contract No. 0795. The record is entirely barren of a showing that plaintiff gave the statutorily required notice of the assignment of Contract No. 0795 to the disbursing officer at any time. Nevertheless, the actions taken by defendant with respect to said contract, as revealed in the record, evince recognition of the assignment under the *Tuftco* standards sufficient to constitute a waiver of the Anti-Assignment Act.

■ Defendant argues that the *Tuftco* waiver standards are inapposite to the instant case because plaintiff there, unlike its counterpart here, was not a financial institution, and therefore the government in *Tuftco* had no statutory notice provision to waive. It is clear from the *Tuftco* opinion and its predecessors, however, that if the government has recognized an assignment, as evidenced by its knowledge, assent, and action(s) pursuant thereto, it has waived the entire statute, including the notice provisions. *See, e.g., Tuftco*, 222 Ct.Cl. at 285–86, 288, 614 F.2d 740; *G.L. Christian & Assoc. v. United States*, 160 Ct.Cl. 1, 10, 312 F.2d 418 (1963). Consequently, the courts have never suggested that the government can waive only those elements of the Act that pertain to nonfinancial insti-

tutions; to the contrary, the provisions of the Anti-Assignment Act have been deemed waived to the benefit of financial as well as nonfinancial institutions, even if all of the statutory prerequisites have not been complied with by the assignee. *See Maryland Small Business Development Financing Authority v. United States*, 4 Cl.Ct. 76 (1983).

Turning to the *Tuftco* factors, first, it is clear here that the responsible government officials had knowledge of the assignment under Contract No. 0795 at the time of the payment of October 31, 1980. This is manifest from the acknowledgment by representatives of the contracting officer and the disbursing officer on plaintiff's Notice of Assignment of June 20, 1980, as well as the July 9, 1980 check from the contractually designated disbursing officer, which was drawn to the order of "American Financial Assoc., Assignee."

The record also indicates unequivocally that the government assented to the assignment, and took action to comply therewith. This is most apparent from the check of July 9, 1980, *supra*. The lack of a "connector" such as "and," "or," or "for" between plaintiff's name on the first line of the check and Complex's name on the second line makes it difficult to assess whether the government intended to make the check payable to plaintiff alone or to plaintiff and Complex jointly.[8] (For example, if the word "for" had been utilized, the listing of Complex's name would be considered to be merely descriptive of the relationship between plaintiff and Complex, and thus payable to plaintiff unconditionally, pursuant to § 3–117(c) of the Uniform Commercial Code.) It is unnecessary for this court to determine whether said check can be negotiated by plaintiff alone or only by both parties however. What is important here is that defendant took the affirmative act under the assignment contract of issuing a payment to the order of the plaintiff,

---

**8.** If the check is considered payable to two parties, it would be payable to the two parties *jointly* under the Uniform Commercial Code (UCC) because it did not expressly state that it was payable to plaintiff and Complex in the alternative. *See* UCC § 3–116(b); *Equipment Distributors, Inc. v. Charter Oak Bank & Trust Co.*, 34 Conn.Super. 606, 379 A.2d 682, 684 (1977).

specifically referring to it as the assignee, in a form which required at least its indorsement.[9]

The foregoing is further buttressed by the contracting officer's letter of November 18, 1980, *supra*, in which defendant acknowledged its error in sending checks to Complex "after the effective date of the Assignment." At the very least, this letter, combined with the acknowledgement of the original Notice by representatives of the contracting and disbursing officers, demonstrates that defendant assented to the assignment. The importance of the foregoing acknowledgment, check, and letter is further highlighted by a total lack of evidence to show that defendant recognized the efficacy of the assignment of Contract No. 0795 at any time. This situation vividly contrasts with the events pertaining to Contract No. 7004, in which the disbursement officer notified plaintiff on November 25, 1980, that its assignment had not yet been recognized. Consequently, premised on the uncontroverted operative facts, this court must hold that the government effectively recognized the assignment of Contract No. 0795 and waived the provisions of the Anti-Assignment Act prior to the payment of $9,521.28 on October 31, 1980.

### III.

Defendant does not contend that the assignment of the accounts receivable under Contract No. 0795 was not efficacious as of October 31, 1980, because of the lack of adequate statutory notice or the absence of a waiver. It argues, however, that summary judgment for plaintiff with respect to both of subject assignments is precluded by a genuine issue of material fact. In its initial brief, defendant argued that said material issue was whether Complex and plaintiff were identical, in which case payment to one would be payment to the other. Plaintiff's opposition brief countered by

stating that this issue was decided in its favor, against defendant, in the 1983 opinion of the ALJ, *supra*, and was therefore precluded from being raised in this litigation by the doctrine of collateral estoppel. In its reply brief, defendant apparently abandoned its "identity of parties" contention, restating the issue as "whether payments received by the assignor were in effect payments to the assignee."

In support of its contention that said genuine issue exists, defendant submitted evidence including, *inter alia*, the deposition and affidavit (with an attached subscription agreement) of one Sam Rovetuso. Said deposition and affidavit, prepared subsequent to the ALJ's opinion, contained evidence to the effect that the shareholders of plaintiff, Morton Tatar and August Lihosit, together owned 49% of Complex from and after the time that Complex was purchased on May 9, 1980. *See* note 6, *supra*. (According to the ALJ's opinion, Rovetuso's wife owned 51% of Complex at the initial date of purchase and 100% beginning approximately one week thereafter, and Messrs. Tatar and Lihosit only owned their 49% share in Complex for approximately one week in the capacity of "finders.")[10] Other evidence presented by defendant, consisting of various bank records, purportedly showed that the present and former presidents and co-owners of plaintiff took an active part in the operation of Complex—specifically, that they were authorized signatories for Complex and that they signed two of Complex's checks.

The court observes that defendant does not allege that subject assignments are void *ab initio* because they, and/or the creation of AFA in early 1980, were acts of fraud serving to enable Complex (and/or Messrs. Tatar and Lihosit) to receive double payment from the government. In fact, at oral argument, defendant specifi-

---

9. The issuance of payment(s) to the assignee was considered "perhaps [the] most significant" circumstance to indicate that the government had recognized the assignment in *Tuftco*. 222 Ct.Cl. at 287, 614 F.2d 740; *see also Maryland Small Business*, 4 Cl.Ct. at 78.

10. The Administrative Law Judge was presented with the foregoing affidavit and attached Subscription Agreement in a motion for stay of its 1983 order. In an order issued on or about March 8, 1984, said judge denied this motion.

cally disavowed such an allegation. It contends, instead, that the evidence it proffers presents a substantial likelihood that those officers or employees of the assignor who were aware of the wrongful payments to the assignor were also officers or employees of the assignee (*i.e.*, they "wore two hats"). In such instance, defendant maintains that the burden would fall on the assignee, whose officers or employees would have received notice of the assignment, to promptly notify the government of the wrongful payment and/or recover the wrongful payment from the assignor.

■■■ This court does not view defendant's foregoing contention, with its supporting documentation, as raising a genuine issue of fact *material* to the instant case. Defendant has presented no authority, and this court knows of none, holding that the obligation of the government to pay an assignee corporation is discharged, under the Anti-Assignment Act or otherwise, because the assignor corporation is beneficially owned or controlled by some of the same parties who own or control the assignee. Moreover, defendant provides no authority to support its view that the assignee has the duty to rectify a wrongful payment to the assignor, after valid notice of the assignment or a *Tuftco* type waiver, even if it has knowledge of the wrongful payment. Although the assignor is obligated under the pertinent Assignment Agreement to notify the *assignee* if wrongful payment is made to it, no concomitant requirement exists for the assignee to notify the government. Instead, once the government has received timely notice of an assignment, it is deemed to pay the assignor at its peril. *Central National Bank,* 117 Ct.Cl. at 399, 91 F.Supp. 738; *see also* 41 U.S.C. § 15 and 32 C.F.R. § 7.103–8, *supra* (prohibition against reductions or set-offs of payments due the assignee).

It is clear, therefore, from all of the foregoing, that even if the facts as alleged by defendant are presumed true, defendant has neither shown nor alleged the existence of any circumstances sufficient to dis-

charge the obligation of the government to pay the assignee as of October 31, 1980, pursuant to the Assignment Agreement. In view thereof, and because we hold that an assignment took place under Contract No. 0795 that was recognized by the government prior to said date, on the authority of *Tuftco,* no genuine issue of material fact exists sufficient to preclude plaintiff from receiving summary judgment with respect to the payment of $9,521.28.

■■■ Defendant points out, however, that the government has the right to recover all sums erroneously paid, a well-settled proposition with which this court cannot take issue. *See Aetna Casualty & Surety Co. v. United States,* 208 Ct.Cl. 515, 520, 526 F.2d 1127 (1975). Consequently, because this court holds that said payment of October 31, 1980, was erroneously made to Complex, and because Complex has not responded to the government's third-party complaint, the Clerk shall enter a default against Complex, pursuant to RUSCC 55(a).

## CONCLUSION

Because plaintiff failed to provide adequate statutory notice with respect to Contract No. 7004 prior to defendant's payment of $134,066.55 on November 6, 1980, defendant's motion for partial summary judgment is granted with respect to such payment, and plaintiff's related motion for summary judgment is denied. It is clear, however, that the government waived the provisions of the Anti-Assignment Act with respect to Contract No. 0795 prior to the payment to Complex on October 31, 1980, of $9,521.28. Inasmuch as no genuine issue of material fact exists which could discharge the obligation of the government to the assignee, judgment shall be entered in favor of plaintiff in the amount of said payment. Additionally, a default judgment of $9,521.28 shall be entered in favor of defendant against Complex, pursuant to RUSCC 55(b)(2).

IT IS SO ORDERED.