**BANCO BILBAO VIZCAYA–PUERTO RICO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–176C.**

United States Court of Federal Claims.

Oct. 17, 2000.

Randall L. Speck, Washington, DC, for plaintiff.

Kyle Chadwick, U.S. Department of Justice, Washington, DC, with whom were Acting Assistant Attorney General David W. Ogden, Director, Commercial Litigation Branch, David M. Cohen and Assistant Director, Commercial Litigation Branch, Mark A. Melnick, for defendant.

### OPINION

FIRESTONE, Judge.

This case comes before the court on defendant's motion for summary judgment. The issue to be decided is whether the government is bound by an alleged assignment of contract rights in favor of plaintiff, Banco Bilbao Vizcaya—Puerto Rico ("BBV"). The undisputed facts of this case establish that plaintiff: (1) failed to secure a valid assign-

ment of the subject contract under the Anti–Assignment Act ("the Act"); and, (2) cannot show that the government waived compliance with the Act. Therefore, the court GRANTS defendant's motion for summary judgment.

## BACKGROUND

### I. Facts

The following facts are not in dispute.[1] On March 13, 1995, the Federal Bureau of Prisons ("the BOP") awarded contract number J403C–014 to Nortek Services, Inc. ("Nortek"); the contract amount, after certain "changes orders" were made, was $371,427. Under the contract, Nortek agreed to perform certain construction projects at the Metropolitan Detention Center at Guaynabo, Puerto Rico ("MDC Guaynabo"). The contract specified that the improvements were to be completed no later than ninety days following the contract award date. The BOP's designated contracting officer at MDC Guaynabo was Heriberto Pagán.

At the time of this contract award, Nortek had a bank account at, and was receiving financing from, plaintiff BBV. Additionally, on March 13, 1995, Universal Insurance Company ("Universal") agreed to act as surety for Nortek on performance and payment bonds in connection with the MDC Guaynabo contract.

It is understood that as part of Nortek's financing agreement with BBV, BBV requested an assignment of Nortek's proceeds from the MDC Guaynabo contract. The Anti–Assignment Act allows for the assignment of such contract proceeds to financial institutions providing financing for government projects, if the assignment is executed in accordance with certain statutory requirements. The Act's requirements are found at 41 U.S.C. § 15 (2000), and the implementing regulations are contained in the Federal Acquisition Regulations ("FAR"), 48 C.F.R. § 32.802–05 (1999). In brief, the Act specifies that the assignee must provide three parties with a copy of the assignment agreement: (1) the agency head or contracting officer; (2) the agency's disbursing officer; and, (3) the contractor's surety. The regulations require that such notice be in triplicate and include proof of the assignor corporation's resolution authorizing the assignment.

According to BBV, the attorney responsible for handling the alleged assignment in its favor was Fermín Contreras, who was then an associate at the firm Cancio, Nadál, Diaz & Berrios located in San Juan, Puerto Rico. Mr. Contreras testified in his deposition that he does not recall consulting any federal statutes or regulations to determine the requirements for a valid assignment of the proceeds of a government contract. In this connection, Mr. Contreras and BBV concede that they never provided the surety, Universal, notice of the alleged assignment as required by the Act, 41 U.S.C. § 15(b)(3). As discussed below, the parties disagree over whether BBV provided adequate notice of the alleged assignment to the BOP.

Nortek performed the MDC Guaynabo contract and executed a certificate of substantial completion in September 1995. On October 2, 1995, the MDC Guaynabo contract was closed out by the BOP, and the BOP and Nortek executed a general release of claims. Pursuant to the contract, between June 2, 1995, and December 8, 1995, the BOP issued payments totaling $333,347.76 directly to Nortek. The BOP never made any payments to BBV.

A year later, in late 1996, BBV engaged in negotiations with Nortek to restructure Nortek's debt holdings at BBV. Eventually, on February 10, 1997, Nortek filed a voluntary petition of bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Thereafter, on March 26, 1997, Nortek's bankruptcy was converted to a Chapter 7 liquidation action. At this time, BBV began to pursue its claim against the government for the proceeds of the alleged assignment. In particular, on July 7, 1997, BBV wrote to Mr. Pagán, the contracting officer for the MDC Guaynabo contract, alleging that the BOP had failed to pay BBV "in accordance with the terms of the assignment notice" and demanding pay-

[1]. These facts are taken from the undisputed facts provided by both parties. *See* Defendant's Proposed Findings of Undisputed Fact, filed May 16, 2000, and Plaintiff's Statement of Genuine Issues of Disputed Fact, filed June 12, 2000.

ment. The BOP denied liability and this action followed.

In addition to the foregoing facts, BBV also claims that the following disputed facts are true regarding the steps it took to notify the BOP of the alleged assignment. First, BBV asserts that its counsel, Mr. Contreras, gave the BOP notice of the assignment by mailing a letter and copy of the assignment agreement to Mr. Pagán at MDC Guaynabo on May 11, 1995, and that Mr. Pagán was both the contracting officer and the disbursing officer on the MDC Guaynabo contract. In support of its assertion, BBV puts forth evidence of a certified mail receipt indicating that a letter was received by a mailroom employee at MDC Guaynabo on May 18, 1995. Additionally, BBV contends that Mr. Contreras verbally informed Mr. Pagán of the assignment in a telephone conversation that preceded the alleged assignment. Mr. Pagán, however, does not recall receiving either the letter or the phone call from BBV or Mr. Contreras. As stated above, BBV does not dispute that Mr. Pagán never directed a single payment from the MDC Guaynabo contract to BBV.

## II. Procedural Posture

BBV initiated this litigation on March 29, 1999. In its complaint, BBV seeks to recover from the government the contract price agreed upon between Nortek and the BOP, on the grounds that the money should have been paid to BBV as the contract assignee. The complaint was divided into two counts against the government: Count I, "Wrongful Payment of Assigned Contract Proceeds," and Count II, "Violation of Assignment Contract."

On May 16, 2000, the government filed a motion for summary judgment on BBV's first count and dismissal of its second count. These two counts were subsequently combined into one in BBV's reply brief opposing

**2.** BBV stated in its reply brief filed on June 12, 2000, that:

> [t]he Government mistakenly asserts that Count II is BBV's breach of contract claim. While BBV acknowledges that this mistake is probably due to the ambiguity created by the title of Count II, "Violation of Assignment Contract," as ¶ 24 of the complaint makes clear,

the government's motions,[2] making the motion for dismissal moot.

## DISCUSSION

### I. Standard of Review and Burden of Proof

Summary judgment is only appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Rules of the Court of Federal Claims ("RCFC") 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Facts are material only if they "might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505. In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. The movant need not "produce evidence" of the absence of a genuine dispute of material fact; instead, the movant need only point out that the record does not support nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Here, the government argues that even if each of BBV's contentions regarding BBV's notice to the BOP is taken as true, the record does not support a finding in BBV's favor. The court agrees. The issue for summary judgment is whether the facts alleged by BBV demonstrate either: (1) that BBV effectuated a valid assignment from Nortek in compliance with the requirements of the Anti–Assignment Act and the FAR; or, (2) that the government waived compliance with the Act and the FAR, thereby making the otherwise deficient assignment enforceable. The facts alleged by BBV do not support either conclusion. Accordingly, the government is entitled to judgment as a matter of law.[3]

> Count II is based upon compliance with the Anti–Assignment Act. Regarding the breach of contract claim (Count I), BBV has determined that this claim is effectively subsumed within Count II and, in the interest of judicial efficiency, is no longer essential.

**3.** BBV erroneously contends that there are numerous material facts in dispute. As one exam-

**32**

## II. BBV Did Not Effectuate a Valid Assignment

■ The Anti–Assignment Act, 41 U.S.C. § 15, provides that the proceeds from ongoing federal contracts may only be assigned to parties outside the original contract agreement if the assignee is a "bank, trust company, or other financing institution," *id.* at § 15(b), and the assignee fulfills the statutory requirements. Under the Act, the assignment itself must cover "all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to reassignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing." *Id.* at § 15(b)(2). In providing notice of such assignment, the assignee must "file written notice of the assignment together with a true copy of the instrument of assignment" with three parties: the contracting officer, the surety upon the bond or bonds in connection with the contract, and the disbursing officer. *Id.* at § 15(b)(3). In addition to echoing these requirements, *see* 48 C.F.R. § 32.802, the FAR provides some additional requirements, including: assignments from corporations must be executed by an authorized representative, attested by the secretary or assistant secretary of the corporation, and impressed with the corporation's seal or accompanied by a "true copy" of the corporation's board of directors' resolution authorizing the assignment. *Id.* at § 32.805(a). The FAR also dictates that the assignee must forward an original and three copies of the notice of assignment to each of three parties: the contracting officer or agency head, the surety, and the disbursing

officer designated in the contract. *Id.* at § 32.805(b).

If the assignee complies with these requirements, the assignee may bring suit against the government to recover any contract payment wrongfully made to another. *Bank of America v. United States,* 23 F.3d 380, 384 (Fed.Cir.1994) (holding that an erroneous payment made by the government is no bar to the rightful claimant); *D & H Distrib. Co. v. United States,* 102 F.3d 542 (Fed.Cir.1996).

It is clear that BBV did not comply with many of the requirements to effectuate the alleged assignment from Nortek. First, BBV concedes that it did not notify Universal, which had agreed to be Nortek's surety, of the alleged assignment. BBV does not deny that Universal acted as Nortek's surety on this contract, but instead it argues that "the contract did not indicate the existence of a surety, much less its identity" and therefore "BBV certainly could not notify a party that, to the best of its knowledge, did not exist." The asserted fact that BBV did not know of Universal's existence is irrelevant given the plain text of the Act and the FAR.[4] Because the requirements of the statute must be strictly construed, the assignee is obligated to comply with its terms. *See American Fin. Assocs., Ltd. v. United States,* 5 Cl.Ct. 761, 767 (1984) (holding plaintiff's failure to notify disbursing officer fatal to an alleged assignment).

Second, it is not disputed that the alleged assignment directed the contract payments to be made to two parties, Nortek and BBV, in contravention of the plain language on the face of the statute, which states that assign-

---

ple, BBV considers the issue of whether Mr. Pagán fulfilled two roles at the BOP instead of just one to be material, given the notice requirements of the Act and the FAR. (Was Mr. Pagán the BOP's contracting officer *and* the disbursing officer, or only the contracting officer?) However, because BBV patently failed to comply with other notice requirements in the Act and the FAR, *see infra* Discussion, Part II, a decision regarding Mr. Pagán's role in administering this contract would not change the outcome of this court's analysis. Because a fact is only material if it "might affect the outcome of the suit under the governing law," the disputed facts in this case are not material and do not preclude sum-

mary judgment. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505.

4. Alternatively, BBV argues that because the bond on the MDC Guaynabo contract was not signed by Nortek, there are "doubts about whether Nortek was even aware of the surety agreement." Because the bond was executed in conjunction with the subject contract and submitted to MDC Guaynabo, and because it is stamped with Universal's corporate seal, it is a properly-executed performance bond. BBV has not suggested by affidavit or otherwise that Universal did not act as Nortek's surety for the MDC Guaynabo contract.

ments "shall not be made to more than one party." 41 U.S.C. § 15(b)(2). The regulations, 48 C.F.R. § 32.802(d)(2), confirm that assignments must be made to "only to one party." The alleged assignment to BBV, therefore, is improper under the statute and the FAR, and must fail. While some courts have recognized dual assignments, those cases all involve waivers of the Act. *See, e.g., D & H Distrib. Co.,* 102 F.3d at 547 (holding that a "partial" assignment of a contract claim is valid once the government has been given adequate notice); *American Fin. Assocs.,* 5 Cl.Ct. at 771–72 ("It is unnecessary for this court to determine whether said check can be negotiated by plaintiff alone or only by both parties ... [because] defendant took the affirmative act under the assignment contract of issuing a payment to the order of the plaintiff ....") BBV has not identified one case where a dual assignment was accepted as complying with the Act.

Third, BBV does not dispute that it did not comply with *any* of the notification requirements of § 32.805 of the FAR, detailing the procedural requirements of the Act. 48 C.F.R. § 32.802–05. For example, the FAR requires that assignment agreements be "executed by an authorized representative," "attested by the secretary or assistant secretary of the corporation," and either "impressed with the corporate seal" or "accompanied by a true copy of the resolution of the corporation's board of directors authorizing ... the assignment." *Id.* at § 32.805(a)(1)(i)-(iii). BBV argues that it *could have* complied with this requirement because Nortek's board allegedly passed a corporate resolution to approve the assignment to BBV on April 27, 1995. However BBV does not allege it sent the document to the BOP. This does not satisfy the plain language of the regulation, which states that a true copy of the resolution shall accompany the assignment.

For these reasons, even if all BBV's allegations of fact are taken as true, BBV did not satisfy the call and the letter of the Anti–Assignment Act or its implementing regulations.

In the alternative, BBV argues that it should be excused from compliance with the notice provisions given the logistical difficulties it faced and that its noncompliance should not be fatal to its claim because the Act should be "applied pragmatically [instead of strictly] with a view to effectuating the purposes underlying the statute." These arguments must fail as a matter of law.[5]

■ Without question, the government may waive compliance with the Act under certain circumstances. However, there is no legal basis to "excuse" noncompliance if the government has not manifested acceptance of the assignment overcoming the assignee's failure to adhere to the Act. *American Fin. Assocs.,* 5 Cl.Ct. at 768–69 (holding that the Act must be "strictly construed" to determine whether an attempted assignment is valid as an initial matter). BBV, having failed to comply with the Act, may now only prevail if the government has waived its requirements by otherwise accepting the deficient assignment.

### III. The Government Has Not Waived the Requirements of the Anti–Assignment Act

■ While BBV has not established compliance with the Anti–Assignment Act, the government may still be liable. "It is well established ... that the government can waive the statutory prohibitions against the assignment of contract rights if the contract-

---

5. In arguing for leniency despite its complete failure to comply with the requirements of the Act and the FAR, BBV is incorrect in arguing that the requirements of Act "should not be strictly construed, but applied pragmatically with a view to effectuating the purposes underlying the statute" (citing *United Int'l Investigative Servs. v. United States,* 26 Cl.Ct. 892, 898 (1992)). If BBV had put the preceding quote in context, it would have realized that the court was considering the notice requirements in light of a government waiver, going on to state, "a transfer [via

assignment] should be upheld [despite notice deficiencies] ... when the government recognizes it either expressly as by novation or implicitly as by ratification or waiver." *Id. See infra* Discussion, Part III. The *United Int'l Investigative Svcs.* court was not discussing the threshold determination of whether or not a valid assignment has been effectuated; in making this threshold determination, the notice provisions of the anti-assignment statutes themselves "must be strictly construed." *American Fin. Assocs.,* 5 Cl.Ct. at 768.

ing officer gives clear assent to the assignment." *D & H Distrib. Co.*, 102 F.3d at 546. There is no doubt, however, that the Anti–Assignment Act is intended for the government's benefit, *Johnson Controls World Servs., Inc. v. United States*, 44 Fed.Cl. 334, 342 (1999) (holding that the Act is "interpreted as being solely for the government's own benefit"), and therefore the waiver must be plain.

■ In this connection, courts look to the "totality of the circumstances" to establish whether or not the government has waived application of the Act. *Tuftco Corp. v. United States*, 222 Ct.Cl. 277, 614 F.2d 740, 745–746 (1980); *see also United Int'l Investigative Servs.*, 26 Cl.Ct. at 898 (finding that an otherwise invalid assignment is validated when the government affirms it "either expressly as by novation or implicitly as by ratification or waiver"). Waiver of the Act has only been recognized where the government has either affirmatively acknowledged an assignment in writing or made payments consistent with the alleged assignment. *See, e.g., Tuftco*, 614 F.2d at 745 (holding that the government had waived the Act where the contracting officer wrote "Assignment acknowledged" at the bottom of the notification letter from the assignor); *American Fin. Assocs.*, 5 Cl.Ct. at 771–72 (holding that assignment was recognized by government where one check issued as payment under the contract was made payable to the assignee). At bottom, the purported assignee must show an affirmative manifestation of the "meeting of the minds" between the assignee and the government, sufficient to satisfy the standard measure of assent in contract law. *D & H Distrib. Co.*, 102 F.3d at 546 ("clear assent" is what is

required). Tested by these standards, BBV has not alleged facts to establish a waiver.

BBV's case hinges on its assertions that: (1) Mr. Contreras, the BBV attorney, spoke with Mr. Pagán *before* the assignment was to be effective; (2) Mr. Pagán promised to forward the assignment agreement to the "appropriate person"; (3) Mr. Contreras sent a copy of the assignment to the BOP; and, (4) the BOP mailroom received a copy of the assignment.[6] Even accepting this evidence as true, it does not amount to a waiver because BBV fails to point to *any* after-the-fact representations made by the BOP recognizing the assignment, nor did the BOP make any payments in keeping with BBV's alleged assignment. Despite the fact that this court granted the parties months to complete discovery, including three extensions of time, BBV has been unable to allege any facts to show that the BOP or Mr. Pagán confirmed the existence of the alleged assignment. BBV does not dispute that the BOP never acknowledged the agreement in writing. Indeed, in its May 1995 letter to Mr. Pagán, BBV requested that the contracting officer sign and return a copy of the letter to the bank as evidence of its receipt and acceptance. ("Kindly return us a copy of this Notice with your signature as evidence of your consent and the absence of prior assignment of record.") According to the record, Mr. Pagán did not comply with this request, nor did the BOP disburse any payments in recognition of the alleged assignment.[7] This dearth of evidence falls short of satisfying the requirements for recognition established by case law. Nothing remotely approaching

6. In asserting these facts, BBV argues that it ought to have been allowed to rely on comments made by Mr. Pagán during the alleged telephone conversation with Mr. Contreras. This outcome is unacceptable, as recognized by this court in a similar situation as presented by *American Financial Associates, Ltd. v. United States*. In that case, plaintiff contended it "had the right to rely on" the contracting officer's representation in a letter that two copies of an assignment agreement would be forwarded to the disbursing officer. *American Fin. Assocs.*, 5 Cl.Ct. at 768. The copies were never forwarded, and the court held that an assignment had never been effectuated. *Id.* ("Such contention of plaintiff, to say the least, is misplaced.") In that case, the contracting

officer made his promise in writing; in BBV's case, the contracting officer only allegedly made the statement in a telephone conversation. If the former is not binding, the latter certainly cannot be.

7. BBV's failure to communicate with the BOP regarding the assignment is strong evidence that BBV understood that the BOP had not acknowledged the assignment. The government argues that this failure justifies estoppel in its favor. Because the court finds that the government did not waive compliance with the Anti–Assignment Act, it does not reach this claim.

the "clear assent" necessary to prove a waiver has been offered.

Thus, this case is very different from *Tuftco*, 222 Ct.Cl. 277, 614 F.2d 740 (1980), upon which BBV relies. In *Tuftco*, the dispositive fact was that, "[a]fter careful examination of the facts of this case, [the court concluded] the contracting officer was fully aware of the assignments, recognized them, and communicated such recognition to plaintiff." *Id.* at 743. The contracting officer in *Tuftco* explicitly assured the plaintiff that the assignments would be recognized by the Department of Housing and Urban Development ("HUD"), and sent a signed acknowledgment of the assignment back to the plaintiff (he wrote the words "assignment acknowledged" across the bottom of the letter of notification sent by plaintiffs). *See id.* at 745–46. Also in *Tuftco*, HUD actually made an after-the-fact disbursement to the plaintiff after the challenged assignment became effective. In contrast to *Tuftco*, in this case the BOP never took a single affirmative step manifesting recognition of the assignment. Without any allegation of affirmative conduct by the BOP manifesting its assent to the assignment, BBV has not established a material issue that precludes summary judgment for the United States. Accordingly, BBV's claim that the government waived the Anti–Assignment Act fails as a matter of law.[8]

## CONCLUSION

In view of the foregoing discussion, the court finds, as a matter of law, that plaintiff BBV did not obtain a valid assignment agreement in compliance with the Anti–Assignment Act or its implementing regulations, the FAR, and that the government did not waive application of the Anti–Assignment Act by otherwise recognizing the alleged assignment. The court therefore **GRANTS** the government's motion for summary judgment. The clerk is directed to enter judgment accordingly. Each party shall bear its own costs.

---

8. Having concluded that BBV's claim fails as a matter of law, the court does not reach the government's claim that BBV's action is barred by laches.