**MERCHANTS' FUNDING GROUP, An Arizona corporation, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 92–100C.

United States Court of Federal Claims.

May 16, 1995.

Diana Weinert–Landrith, Scottsdale, AZ, for plaintiff.

Deborah A. Brinley, Washington, DC, with whom were Asst. Atty. Gen. Frank W. Hunger, Director David M. Cohen, and Asst. Director Bryant G. Snee, for defendant.

### *ORDER*

LYDON, Senior Judge:

In this contract case, plaintiff, as the alleged assignee of a government contractor, seeks to recover certain proceeds from that contract, which, plaintiff alleges, were wrongfully paid by the government to the assignor contractor rather than to plaintiff. Defendant has moved for summary judgment contending that the government properly paid the proceeds in issue to the contractor because plaintiff had failed to comply timely with certain requirements of the Assignment of Claims Act, 31 U.S.C. § 3727 (1988), and 41 U.S.C. § 15 (1988). Plaintiff has cross moved for summary judgment maintaining that it did comply with the Assignment of Claims Act. Upon consideration of the submissions of the parties and oral argument, the court grant's defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment.

**I**

Plaintiff is a corporation organized and existing under the laws of the State of Arizona. It is in the business of providing financing for small businesses, many of which are engaged in government contracts. The

court understands that plaintiff is presently in bankruptcy. At oral argument, counsel for plaintiff advised that plaintiff had obtained approval from the Bankruptcy Court to proceed with this litigation.

On or about June 29, 1987, the Sacramento Air Logistics Center, McClellan Air Force Base, California (SALC) entered into a fixed price contract with John E. Rogers Engineering Co., Inc., (Rogers) for the manufacture of six spring assemblies. The Contract Purchase Order was identified as No. FO4606–87–M–3915. The original contract price was $16,128, with delivery of the springs to be in accordance with the delivery schedule set forth in the contract. Payment was to be made on completion of delivery of the springs. The original date for delivery was November 29, 1988. However, as a result of contract modifications, signed by the parties to the contract, the delivery schedule was extended, with corresponding reductions in the contract price.[1]

Contract No. FO4606–87–M–3915 (Rogers' contract) was signed by Karen L. Petering as "Contracting Officer." Block 15 of the contract stated "Payment Will Be Made By DCASR [Defense Contract Administrative Service Region], Los Angeles, P.O. Box 45011–0011, Los Angeles CA 90045–6197." It would appear that this Payment Block address was subsequently changed on more than one occasion after the Department of Defense switched to "Electronic Funds Transfer Payment Methods."[2]

On June 7, 1990, a determination was made by the Administrative Contracting Officer (ACO) to institute termination for default proceedings since Rogers had failed to deliver the springs, even after receiving several extensions of time. Accordingly, the Rogers' contract file was forwarded by the office of the ACO to the office of the Termination Contracting Officer (TCO). While the TCO was investigating the basis for such action, Rogers delivered five spring assemblies on or about July 15, 1990, and the remaining spring assembly on July 30, 1990. Because the springs were eventually delivered, the government aborted termination proceedings. On August 13, 1990, the Payment Office official responsible for verifying and making payments to Department of Defense contractors signed a check for $12,444.79, covering the delivery of five springs made out to Rogers for work on Contract Purchase Order No. FO4606–87–M–3915. On or about August 17, 1990, Rogers received and cashed the above check which proceeds Rogers refused to turn over to plaintiff. Thereafter, Rogers filed for bankruptcy. Plaintiff suggests that a second check in payment for delivery and acceptance, on July 30, 1990 of the sixth spring, was made on or about August 22, 1990.

Although Rogers entered into its contract with SALC on June 29, 1987, it was not until June 21, 1989 that Rogers and plaintiff executed a document labeled "Assignment Of Government Contract" (Assignment). At oral argument, counsel for plaintiff explained the two year delay in forwarding the Notice of Assignment as due to an agreement between plaintiff and Rogers that the Notice of Assignment would not be forwarded to the government until plaintiff received "all the funding" necessary to complete the contract. The text of the June 21, 1989 Assignment stated, *inter alia*, that all moneys and claims for amounts due Rogers under "contract

---

1. The original Contract No. FO4606–87–M–3915 (Rogers' contract) was modified at least five times to either extend the delivery schedule or to change the payment office address. These modifications, all in the year 1989, fell on January 30, June 22, September 1, September 21, and September 27.

2. In the contract modification dated September 1, 1989, the contract was modified to change the contract payment office *From:* "DCASR LA, Attn. CFMF, P.O. Box 1012, El Segundo, CA, 90245–1012 Code: SO506A;" *To* "DLA [Defense Logistics Agency] Finance Center, DFC [Defense Finance Center] San Francisco, P.O. Box 182380, Columbus, Ohio, 43218–2380, Code SC1008." Ostensibly the "El Segundo CA, 90245–1012 Code SO506A" Payment Office address had previously superseded the original "Los Angeles CA, 90045–6197" Payment Office address in the contract. In August 1990, the single correct address throughout the Department of Defense (DOD) for an assignee to send a Notice of Assignment for contracts administered by a DOD agency in Northern California was Defense Logistics Agency Finance Center, Contract Entitlement Section, P.O. Box 182380, Columbus, Ohio, 43218–2380.

J241–87–M–3915" were assigned by Rogers to plaintiff. The text also advised that a copy of the contract was attached to the document. The text of this document also provided in pertinent part:

> The Assignor covenants and agrees that in the event it shall receive payment of any moneys assigned hereby, it will forthwith pay and deliver the same to MFG in precisely the form received and, until so paid over and delivered, will hold the same in trust for MFG, and will not commingle the same with any funds of the Assignor.

This Assignment was not submitted to the government until August 8, 1990, over a year after its execution by Rogers and plaintiff. It should also be noted that the contract identified in the assignment, "No. J241–87–M–3915" was not the contract in issue, *i.e.,* "No. FO4606–867–M–3915." Plaintiff asserts that this inconsistency is simply a typographical mistake.

Plaintiff, by letter dated August 8, 1990, signed by Richard Rock (Rock) an employee of plaintiff, to "Karen L. Petering, Contracting Officer," stated:

> Pursuant to our telephone conversation today, I am overnighting you the original signed and notarized assignment of government contract, a copy of the contract there mentioned, and an acknowledgment sheet. *Upon your advice,* I am sending a copy of all to the payment center, DCASR Los Angeles. (Emphasis added.)
>
> I ask that, if at all possible, in a timely fashion I receive a signed copy of the acknowledgment sheet to complete my files.

By letter dated August 8, 1990 to "Greg Shubert [sic], [whom plaintiff believed was the disbursing or payment officer] DCASR, Los Angeles, P.O. Box 45011–0011, Los Angeles, CA 90045–6197," Rock wrote:

> Pursuant to our telephone conversation today, I am overnighting you a copy of the contract, the signed and notarized assignment of the government contract and an acknowledgment sheet. For your information, I have sent the originals of the same to the contracting officer.

> I ask that, if at all possible, in a timely fashion I receive a signed copy of the acknowledgment sheet to complete my files.

Although the letters did not refer to a specific contract number, each letter included a copy of the Rogers' contract. While plaintiff in each letter set forth above requested a signed copy of acknowledgement, the government never formally acknowledged receipt of the assignment.

Plaintiff maintains that these two letters complied with the statutory requirement of the Assignment of Claims Act, 41 U.S.C. § 15, which requires that Notice of the Assignment be sent to both the contracting officer and to the disbursing officer. *See also* 48 C.F.R. § 232.805.

Greg Schubert (Schubert) states in his affidavit that he was not the Disbursing Officer for the Rogers' contract at any time. Rather, Schubert avers, he was a Customer Service Representative for Defense Logistics Agency Finance Center in Columbus, Ohio. In his affidavit, Schubert states he cannot recall receiving any Notice of Assignment from plaintiff and a review of his files do not show his receipt of any such Notice. Furthermore, Schubert avers that he never worked in the DCASR in Los Angeles. Schubert claims that the DCASR ceased operating in the Los Angeles in 1989 when its responsibilities were transferred to the Defense Finance and Accounting Service, P.O. Box 182317, Columbus, Ohio 43218–2317. There is no indication in the materials before the court as to what happened to the Notice mailed to Schubert since neither Schubert nor the proper disbursing office have any record of the receipt of any such Notice. It is clear that Schubert, in any event, was not a disbursing or payment officer.

The correct payment or disbursing office for the Rogers' contract in August 1990 was the DLA (Defense Logistics Agency) Finance Center, San Francisco Division, P.O. Box 182380, Columbus, Ohio 43218–2380. The Payment Disbursing Official or Officer at this office was Stephen R. Frisch. As Disbursing Officer, Frisch was responsible for receiving, accepting and acknowledging all Notices of Assignment on behalf of all Department of

Defense (DOD) agencies, like the Air Force, for contracts for which his office was the applicable DOD payment office.[3] In his affidavit, Frisch states that his office logged in all Notices of Assignment received by his office and that no Notice of Assignment was received by his office in August 1990 relating to the Rogers' contract. Frisch also stated in his affidavit that he did not receive, accept, or acknowledge any Notice of Assignment from plaintiff concerning the Rogers' contract. Frisch also stated in his affidavit that on August 13, 1990, he signed a check on behalf of the government, in the amount of $12,444.79 as payment to Rogers for performance of Contract No. FO4606–87–M–3915. Frisch's affidavit makes no mention of the issuance of a second check to Rogers, if one existed.

The Rogers' contract was signed by Petering as "Contracting Officer." At the time she signed the Rogers' contract, Petering was a Procurement Contracting Officer (PCO). Her duties included review of the pre-award files, solicitations contractor quotes or bids and signing of contracts/purchase orders on behalf of the government. After the Rogers' contract award, in accordance with Federal Acquisition Regulations (FAR), Part 42, administrative responsibilities for the Rogers' contract were assigned to the Defense Contract Administration Service office in San Francisco, California, which is part of the Defense Logistics Agency (DLA) and was thereafter handled by an "Administrative Contracting Officer" (ACO). *See* 48 C.F.R. § 42.302. DLA is not part of the Air Force. It is a separate agency within DOD. As a result, after award of the Rogers' contract Petering had no actual post-award responsibility for the contract.

In her affidavit, Petering recalled receiving a misdirected Notice of Assignment from plaintiff in 1990. She never formally acknowledged the Notice of Assignment as she did not have post-award administrative responsibility for the Rogers' contract. She states she took the Notice to the post-award division in the Contracting Office at McClellan Air Force Base, which division was responsible for monitoring post-award contract matters, for handling by an ACO. She had no further knowledge of what happened to the Notice thereafter.

The ACO on the Rogers' contract was Jack Tomse (Tomse). On or about August 17, 1990, Tomse received from the TCO, John R. Rickman, the Rogers contract file which contained the "Assignment of Government Contract" sent by plaintiff plus contract correspondence. Also on August 17, 1990, in a conversation with Marvel Levi, ostensibly a section supervisor in the contract procurement branch, Rock was given Tomse's name and telephone number and was told that Tomse was the proper person to receive the Notice of Assignment. Plaintiff claims it mailed a Notice of Assignment to Tomse on August 14, 1990 but no such letter supporting this claim has been provided the court.

It seems reasonable to assume that Tomse eventually received the Notice of Assignment previously sent, erroneously, to Petering. On August 29, 1990, Tomse wrote plaintiff in pertinent part:

SUBJECT: Return of Notice of Asignment [sic], Contract FO4606–87–M–3915 John E. Rogers Engineering

\* \* \* \* \* \*

Dear Mr. Rock:

Subject notice is being returned to you without being processed by the Government. The contract number on page 1, paragraph 1 of the assignment is incorrectly stated as J241–87–M–3915. Also, the final invoice payment under this contract is scheduled for release on 30 Aug 90. This allows insufficient time to process the assignment.

Questions can be directed to the undersigned.

Plaintiff's President, Kurt E. Freitag (Freitag), responded, by letter dated August 30, 1990, to Tomse's letter of August 29th in pertinent part as follows:

First, the content of the form of assignment is immaterial to the government's processing of assignments of claims. Nei-

---

**3.** As noted earlier, the Rogers' contract was modified, effective September 1, 1989 to reflect a change in the address of the payment office to Frisch's office address in Columbus.

ther the Assignment of Claims Act, 41 USCA 15, nor the relevant portions of the FARs, 32:806, require even a reference to the contract number. Attached to the assignment and notice was a copy of the relevant contract, so there should be no difficulty regarding the substance and applicability of the assignment.

Second, copies of the notice and assignment were received by the contracting officer and payment center on August 9, 1990, three weeks prior to the issuance of this payment.[4] The claim that "insufficient time" was allowed is, therefore, unsupportable.

We urge you to take steps to ensure that the payment in question is sent to Merchants' Funding Group, Ltd., as the lawfully entitled payee. If you should fail to do so, we will have no alternative but to file a claim against the government to recover these funds.

As noted previously, a check dated August 13, 1990 had already issued and had been received by the contractor (Rogers) on August 17, 1990 for five springs. Payment for the sixth spring, which was delivered on July 30, 1990, was made, ostensibly, on or about August 22, 1990.

Rock, an employee of plaintiff, submitted an affidavit in which he states that he sent, by overnight mail on August 8, 1990, copies of the "Assignment of Government Contract" for contract FO4606–87–M–2915 to Petering, Contracting Officer and Greg Shubert [sic], DCASR, Los Angeles.[5] Rock further stated that Shubert [sic] informed him by telephone on August 9, 1990 that he had received the Assignment and that payment on the contract was scheduled for August 19, 1990.[6]

Rock further stated that subsequent to August 9, 1990, but before payment was issued on August 14, 1990, he spoke by telephone with Petering. According to Rock, Petering informed him that she had received the Assignment on August 9, 1990 and that she had "put it in the appropriate people's hands to take care of." The record suggests that the "proper hands," i.e., Tomse, received the Assignment and Notice on or about August 17, 1990.

Rock further stated that prior to issuance of payment on August 14, 1990, he spoke to three individuals (Judy Colbert, Marvel Levi, and Joe Lara) to confirm that payment would be sent to plaintiff.[7] Rock understood that these individuals were responsible for the modification in the payment address. The positions, authority, and job duties of these three individuals are not described in the materials before the court. None of these individuals, it is clear, served as disbursing officers or administrative contracting officers on the Rogers' contract. Rock avers that he was advised a modification would be issued. Rock avers he was advised by Joe Lara that he, Joe Lara, "would speak directly to Greg Shubert [sic] with the payment office to ensure that the payment would be sent to the proper party." [8] Rock avers that he was informed that the Contracting Officer might have to place a hold on the payment until the modification could be issued.

Rock further stated in his affidavit that on August 14, 1990 he sent copies of the Assignment to Jack Thomas [sic] who, he was told, was the acting contracting officer. Rock avers that he continued to make "repeated telephone calls to Petering, Marvel Levi,

---

4. Payment by check for five of the six springs was sent on August 13 or 14, 1990, and received and cashed by Rogers on or about August 17, 1990. The final payment for the 6th spring, was scheduled for release on August 30, 1990 according to the Tomse letter. Plaintiff says the second payment was mailed on August 22, 1990. While Freitag states copies of the assignment were received by the contracting officer and the payment center on August 9, 1990, neither of those mailings were directed to the appropriate and proper contracting officer or payment center.

5. As discussed, the "Assignment of Government Contract" submitted by Rock incorrectly identi-

fied the contract subject to assignment as "J241–87–M–3915." The transmittal letters to Petering and Schubert are set forth above in the text.

6. Schubert, in his affidavit, denies receiving any notice of assignment.

7. A record of telephone calls, attached to plaintiff's brief, suggests that these calls were made on or about August 17, 1990.

8. Schubert in his affidavit states he had no responsibilities regarding the payment office in that he was a customer service representative.

Jack Thomas [sic] and Alice Higgins through August 17, 1990 and was *never informed by government personnel that the payment check had been issued to Rogers three days before.*"[9] Alice Higgins is not identified in the materials before the court.

It would appear that, on or about August 17, 1990, plaintiff was informed by Rogers that he, Rogers, had received payment of $12,044.79 from the government for performance of the contract and had cashed the check. Rogers, on the brink of insolvency, informed plaintiff that he did not intend to transmit the funds to plaintiff.

On or about August 19, 1990, Merchants filed a claim with the contracting officer seeking recovery of the $12,044.79 that was paid to Rogers. The Contracting Officer denied this claim for lack of jurisdiction on the ground the Contract Disputes Act did not provide jurisdiction in plaintiff to file such a claim. Plaintiff's appeal to the Armed Services Board of Contract Appeals was likewise dismissed for lack of jurisdiction. Plaintiff filed suit on February 10, 1992 in the United States Claims Court[10] seeking recovery of $16,128, the full contract price.

## II

Because plaintiff's claim arises from an alleged wrongful payment to a party in violation of the Assignment of Claims Act, this court has jurisdiction to hear and rule on the claim. *Thomas Funding Corp. v. United States,* 15 Cl.Ct. 495, 501–02 (1988). Plaintiff seeks to recover contract proceeds from the government as an assignee of a government contractor. Defendant contends plaintiff failed to comply with the requirements of the Assignment of Claims Act, 41 U.S.C. § 15, and thus fails to qualify as an assignee entitled to recover such proceeds. Plaintiff argues that it has complied with the provisions of the Act.

The Assignment of Claims Act (the Act) provides, in pertinent part, that an assignee of any assignment of a government contract:

> shall file written notice of the assignment together with a true copy of .the instrument of assignment with (a) the contracting officer or the head of his department or agency; (b) the surety or sureties upon the bond or bonds, if any, in connection with such contract; and (c) the disbursing officer, if any, designated in such contract to make payment.

41 U.S.C. § 15.

DOD regulations implementing the Act provide in pertinent part:

> (b) the assignee shall forward—
>
> (i) to the *administrative contracting officer* (ACO), a true copy of the instrument of assignment and an original and three copies of the notice of assignment. The ACO shall acknowledge receipt by signing and dating all copies of the notice of assignment ...
>
> (iii) to the *disbursing officer of the payment office cited in the contract,* a true copy of the instrument of assignment and an original and one copy of the notice of assignment. The disbursing officer shall acknowledge and return to the assignee the copy of the notice and shall file the true copy of the instrument and original notice.

DOD FAR Supplement § 232.805, 48 C.F.R. Part 232 (1989) (emphasis supplied).

## A

Plaintiff contends that its submissions to Petering and Schubert on or about August 8, 1990 constitute compliance with the Act's requirement set forth above. Plaintiff, however, is mistaken. While Petering's name appears in the contract as "Contracting Officer," she was the Procurement Contracting Officer (PCO), and not the Administrative Contracting Officer (ACO). Her responsibilities under the contract ceased when the

---

**9.** The materials at hand suggest that these individuals were unaware that a payment check had been sent to Rogers until Rock, in a telephone conversation with one of them on August 19, 1990 so advised.

**10.** Effective October 29, 1992, the Claims Court was renamed the "United States Court of Federal Claims." Federal Courts Administration October of 1992. Pub.L. No. 102–572 § 902(a), 106 Stat. 4506, 4516 (1992).

contract was awarded. After contract award, the contract was administered by an ACO. The ACO of the Rogers contract was Jack Tomse. Rock, an employee of plaintiff, had telephoned Petering, on or about August 9, 1990, and learned she was not the right person to receive assignment documents. Petering, according to Rock, told him she would put the assignment materials "in the appropriate peoples' hands to take care of." Petering did this and the appropriate materials eventually landed in Tomse's office on or about August 17, 1990.[11]

Defendant does not contend simply that the Notice of Assignment received by ACO Tomse was initially sent to the wrong office in violation of the Assignment of Claims Act. Instead, defendant contends first, that the Notice of Assignment, accompanied by a copy of the assignment, was defective; and second, that the Notice was untimely.

Defendant contends that the Notice materials were defective because the Assignment from Rogers to plaintiff identified the contract being subject to the assignment as "J241 87–M–39154." The contract under which plaintiff seeks recovery herein is identified as "FO4606–87–M–3915." This contract number was mistakenly altered in both the Notice of Assignment and the Assignment itself. Even though the resultant assignment may be questionable, assuming compliance with the Act, plaintiff is entitled to that degree of protection ordinarily given to an innocent assignee who acts in good faith. *Central Nat'l Bank of Richmond v. United States,* 117 Ct.Cl. 389, 397–98, 91 F.Supp. 738, 740 (1950). Thus, the assignment may not be ignored by the government if the provisions of the Act were properly followed. *Id.*

In this case, however, the Notice of Assignment was properly accompanied by copies of the proper contract in issue, as required in the Act, which itself provided the proper identification number. In addition, the record indicates that the defect was uncovered and personnel were able to ascertain the appropriate contract to which the assignment materials pertained.[12] Although defendant claims the defect is sufficient, in and of itself, to vitiate the entire assignment, the materials at hand could be viewed as sufficient to apprise government personnel of the significant features of the assignment and the contract to which it applied. If in this case, government personnel indeed understood the true nature of the assignment, arguably the purpose and the letter of the Act would be satisfied. While the defect, under the circumstances, may have caused some delay in getting the assignment materials into the right hands, defendant has made no attempt to show this to be the case. The defect described does not, without more, render the assignment itself invalid. The Court of Claims, our predecessor, has hinted that where an assignment submitted to the government is of questionable validity or intent, the proper response is to freeze payment pending resolution of the issue. *See Richmond,* 117 Ct.Cl. at 397–98. In any event, a trial on the question of whether, under all the circumstances, the government should have frozen all contract payments until the assignment question had been resolved is lurking in the bushes of this litigation. *Id.*

---

11. Plaintiff claims it sent a Notice of Assignment and a copy of the assignment to Tomse on August 14, 1990 but no documentation was provided in support thereof. Even accepting, at face value, this assertion, it appears that Tomse received the assignment materials, at the earliest on August 17, 1990. At oral argument, it was learned that Tomse was deceased. Up until the middle of August 1990, the contract file was in the TCO office. John Hickman was the TCO. The contract file was tracked down and returned to Tomse, the ACO, for action on plaintiff's assignment documents sometime after the middle of August 1990. On August 29, 1990, Tomse returned the assignment documents to plaintiff.

12. In his August 29, 1990 letter to plaintiff, the ACO, returned the Notice of Assignment unprocessed noting the incorrect contract number in the assignment itself but headnoting the correct contract number. The ACO advised that the Notice of Assignment was not being processed because the final payment was scheduled for release on August 30, and, as a result, there was insufficient time to process the assignment. The ACO did not find the presence of an "incorrect" contract number sufficient to disable the assignment.

As indicated previously, payment for five of the six springs was made on or about August 14, 1990, with the payment check being cashed by Rogers on or about August 17, 1990. The second check was presumably issued on or about August 22, 1990. There is no evidence when it was received by Rogers or when it was cashed. Whether or not there was sufficient time to process or stop payment on the issued checks is not subject to resolution by summary judgment at this time because there are unanswered factual questions. In any event, plaintiff clearly is not entitled to summary judgment since issues of material fact exist.

Fortunately, neither a trial nor a legal analysis of the defect need occur, because the matter at hand is subject to disposition due to plaintiff's failure to provide proper notice of assignment to the disbursing officer. The court need not, and does not, reach any dispositive determination on the question of the validity or timeliness of the Notice of Assignment sent to the PCO Petering or the ACO Tomse. Furthermore, there is no indication at this time that the monies loaned to Rogers were used exclusively to aid performance of the contract in issue. *See Coleman v. United States*, 158 Ct.Cl. 490, 496, 1962 WL 9304 (1962). This too remains a factual issue.

**B**

■ The Act requires, *inter alia*, that the assignee shall forward notice of assignment to "the *disbursing officer of the payment office* cited in the contract." 48 C.F.R. § 232.805(b)(iii). It is clear in this case that plaintiff never sent a Notice of Assignment and a copy of the assignment to the proper disbursing officer. Plaintiff contends that the Notice of Assignment sent Schubert on August 8, 1990 at the Los Angeles payment address set forth in the contract as originally issued was sufficient compliance with the Act

to support its status as an assignee entitled to contract payments. The fact that Schubert was not the disbursing officer, or that the Los Angeles address was not the proper payment office address is, according to plaintiff, immaterial. This is so, says plaintiff, because the Assignment of Claims Act does not provide that the Notice of Assignment "be sent to the 'proper' or 'correct' disbursing office (or officer) but rather to the one 'Designated In The Contract.'" Plaintiff ignores completely the fact that the contract was modified to change the contract payment office from Los Angeles, California to Columbus, Ohio. Plaintiff's position, in this regard, is untenable.

To counter the fact that plaintiff never sent a Notice of Assignment to the proper disbursing office or officer as required by the Act, plaintiff first contends that since a disbursing *officer* was not "*in haec verba*" identified in the payment block of the original contract, this requirement of the Act was not operative in this case. The court rejects this argument outright. In this case, both a disbursing officer and a disbursing office were properly provided to plaintiff in the Rogers' contract.

As indicated above the contract in issue was modified to change the contract payment office, on September 1, 1989, to "Defense Logistics Agency (DLC) Finance Center, Box 182380, Columbus Ohio, 43218–2380, *Code SC1008*" (Emphasis supplied).[13] Plaintiff argues that the replacement of an officer's name with a code number, eliminates the necessity of submittal to the disbursing office. This same argument now raised by plaintiff was presented to the court and rejected in *American Fin. Assocs., Ltd. v. United States*, 5 Cl.Ct. 761, 768 (1984), *aff'd*, 755 F.2d 912 (Fed.Cir.1985), and we therefore reject it now. In *American Financial*, as in the instant case, plaintiff contended that the use of a code number (Code 55.23) in

---

13. This contract modification was issued prior to August 8, 1990, when plaintiff first notified Petering the PCO, that it was an assignee of Rogers. Accordingly, since plaintiff had not submitted its June 21, 1989 assignment notice until August 1990, it had not received from the government a copy of the September 1, 1989 modification changing the address of the payment office. The court notes that a more prompt notice of assignment would have allowed the government to provide plaintiff with copies of contract modifications which occurred after the assignment, and thus the correct payment address. This unfortunate circumstance is one of the perils of providing notice of assignment to the government at the eleventh hour.

lieu of an officer's name vitiated the Act's notice requirement. This court ruled:

> We therefore hold that the inclusion of said code number and address an adequate designation of the disbursing officer to satisfy the purposes of the statutory notice requirements discussed *infra*.[5]

[5] The reason proffered by defendant for the numerical code designation is that its purpose is merely to identify any person holding the job title of "disbursing officer" at any point in time. This construction certainly is administratively preferable inasmuch as it tends to benefit the assignee more so than the debtor. For example, if a particular individual were named in the contract as the disbursement officer and said person's job description changed prior to the assignment, notice by the assignee to such named individual of the assignment could arguably be contended by defendant as failing to notify the disbursement officer.

*Id.* at 768.

█ Next, plaintiff claims that it notified Petering and other government employees of the assignment as early as August 8, 1990. At that time, plaintiff argues, these employees advised plaintiff that they would ensure proper forwarding of the Notice of Assignment. Furthermore, plaintiff asserts that representations were made to him that the contracting officer might have to place a hold on payment until a modification could be issued to plaintiff. If these representations under the circumstances of this case were of any relevance, this matter would not be subject to disposition by summary judgment but would require a trial. In law, however, these representations are subsumed by the clear and mandatory language of the Assignment of Claims Act.

Plaintiff contends it had a right to rely on these representations and that such representations absolve it of any requirement for giving direct notice to the proper disbursing officer or office. A similar argument was rejected by the court in *American Fin.*, *supra*, in pertinent part as follows:

> Plaintiff also contends that a lack of direct notice from itself to the disbursing officer prior to the November 6, 1980 payment should not bar the effectiveness of the May 7, 1980 assignment of Contract No. 7004 against the government as of that

date, because it "had the right to rely on" the contracting officer's representation in its June 26, 1980 letter, *supra*, that two copies of the Notice of Assignment were being forwarded to the disbursing office. Plaintiff further avers that if it is strictly held to the notice requirements under the applicable statutes, the court would be elevating form over substance, inasmuch as the disbursing office apparently lost or misfiled the notice from the contracting officer and could have done the same with the notice from plaintiff.

Such contention of plaintiff, to say the least, is misplaced. The notice provisions (to the contracting officer as well as to the disbursing officer) of the anti-assignment statutes serve to further the statute's purpose of "prevent[ing] possible multiple payment of claims, [and] ... making unnecessary the investigation of alleged assignments...." *United States v. Aetna Surety Co.*, 338 U.S. 366, 373, 70 S.Ct. 207, 211, 94 L.Ed 171 (1949). In order to accomplish the foregoing purposes, said notice provisions must be strictly construed. *See e.g., United States v. Shannon*, 342 U.S. 288, 293, 72 S.Ct. 281, 284, 96 L.Ed. 321 (1952); *Kingsbury v. United States*, 215 Ct.Cl. 136, 563 F.2d 1019 (1977). Congress's strong interest in avoiding multiple payments and assuring that all responsible government officials are timely notified of assignments is further evident from the regulations promulgated pursuant to the anti-assignment statutes, expressly incorporated into subject contract, which provide that both the assignee and the administrative contracting officer must forward a notice and a copy of the instruments of assignment to the disbursing officer. *See* 32 C.F.R. § 7–103.8, *supra.*

This court, therefore, does not consider the assignee's purported reliance on the contracting officer's representation of June 26, 1980, sufficient to justify reading the requirement for notice to the disbursing officer out of the applicable statute, regulation, and contract. In so finding, this court endorses the holding of the General Accounting Office (GAO) that "we cannot view [the] notice [requirement in the regu-

lations for the contracting officer to notify the disbursing officer of assignments of contracts] as a substitute for the plain and unambiguous directive of the statute that the assignee forward a true copy of the assignment as well as a notice of assignment directly to the disbursing officer named in the contract." *Merchants & Farmers Bank & Trust Company*, No. B-159494 (Comp.Gen. Sept. 2, 1966).

5 Cl.Ct. at 768–69.

Plaintiff does not argue, not could it do so persuasively, that the government's action in this case manifested an intent to waive the requirements of the Assignment of Claims Act. Indeed, the overt actions of responsible government personnel in the instant case clearly manifest an intent not to waive the Act's requirements for a valid assignment of a claim. *See American Fin.*, 5 Cl.Ct. at 769. In the case at bar, the record is clear that the disbursing officer and payment office for the Rogers' contract had no knowledge of the assignment at times material here. *See Uniroyal, Inc. v. United States*, 197 Ct.Cl. 258, 454 F.2d 1394 (1972). This lack of knowledge effectively disposes of any possible waiver of the Act's requirements by the government. *American Fin.*, 5 Cl.Ct. at 769.

### III

For the reasons set forth above, plaintiff has failed to comply with the requirement of the Assignment of Claims Act, 31 U.S.C. § 3727, 41 U.S.C. § 15, that it file a Notice of Assignment and a copy of the assignment with the disbursing officer or payment office designated in the contract. As a result, plaintiff is not entitled to recover the Rogers' contract proceeds as an assignee of the contractor, Rogers.

Defendant's motion for summary judgment is granted; plaintiff's cross-motion for summary judgment is denied. The clerk is directed to dismiss the complaint. No costs.